CASE NO. 25-5104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA PLAINTIFF-APPELLEE

V.

SAMUEL ATKINS DEFENDANT-APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY AT LEXINGTON

---

# BRIEF OF THE DEFENDANT-APPELLANT
# SAMUEL ATKINS

---


JARROD J. BECK

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY 40507
859-948-5535

COUNSEL FOR DEFENDANT-APPELLANT

## TABLE OF CONTENTS

Table of Authorities ............ ii

Statement Regarding Oral Argument ............ 1

Statement of Subject Matter and Appellate Jurisdiction ............ 1

Statement of the Issues ............ 1

Statement of the Case ............ 2

Standard of Review ............ 13

Summary of the Argument ............ 14

Argument ............ 15

I. The district court erred in its drug quantity calculation under USSG § 2D1.1 ............ 15

II. The district court erred by applying a two-level firearm enhancement pursuant to USSG § 2D1.1(b)(1) ............ 20

III. The district court erred by applying an upward departure pursuant to USSG § 5K2.2 ............ 22

IV. Mr. Atkins's sentence is substantively unreasonable ............ 27

Conclusion ............ 30

Certificate of Compliance

Certificate of Service

Designation of District Court Documents

# TABLE OF AUTHORITIES

## I. Cases

*United States v. Araiza*,
643 Fed.Appx. 524 (6th Cir.2016) ........................................................................ 13

*United States v. Ashrafkhan*,
821 Fed.Appx. 428 (6th Cir.2020) ........................................................................ 13

*United States v. Carter*,
510 F.3d 593 (6th Cir.2007) ................................................................................. 13

*United States v. Catalan*,
499 F.3d 604 (6th Cir.2007) ................................................................................. 20

*United States v. Conatser*,
514 F.3d 508 (6th Cir.2008) ................................................................................. 27

*United States v. Crockett*,
82 F.3d 722 (7th Cir.1996) ............................................................................. 15, 17

*United States v. Curry*,
536 F.3d 571 (6th Cir.2008) ................................................................................. 27

*United States v. Gales*,
137 Fed.Appx. 875 (6th Cir.2003) ........................................................................ 13

*United States v. Gilbert*,
173 F.3d 974 (6th Cir.1999) ................................................................................. 13

*United States v. Gillespie*,
929 F.3d 788 (6th Cir.2019) ................................................................................. 24

*United States v. Green*,
729 Fed.Appx. 416 (6th Cir.2018) ........................................................................ 13

*United States v. Heckman*,
30 F.3d 738 (6th Cir.1994) ............................................................................. 22, 27

*United States v. Hill*,
79 F.3d 1477 (6th Cir.1996) ............ 18, 19, 20, 22

*United States v. Jeross*,
521 F.3d 562 (6th Cir.2008) ............ 13

*United States v. Johnson*,
2024 WL 4648088 (6th Cir. November 1, 2024) ............ 27

*United States v. Kennedy*,
65 F.4th 314 (6th Cir.2023) ............ 20

*United States v. Miggins*,
302 F.3d 384 (6th Cir.2002) ............ 13

*United States v. Ortiz*,
431 F.3d 1035 (7th Cir.2003) ............ 16

*United States v. Patel*,
131 F.3d 1195 (7th Cir.1997) ............ 17

*United States v. Price*,
749 Fed.Appx. 396 (6th Cir.2018) ............ 23, 25

*United States v. Rios*,
830 F.3d 403 (6th Cir.2016) ............ 15

*United States v. Ritsema*,
31 F.3d 559 (7th Cir.1994) ............ 16

*United States v. Sanders*,
982 F.2d 4 (1st Cir.1992) ............ 18

*United States v. Sands*,
948 F.3d 709 (6th Cir.2020) ............ 13

*United States v. Settle*,
414 F.3d 629 (6th Cir.2003) ............ 13

*United States v. Silkowski*,
32 F.3d 682 (2d Cir.1994) ........................................................................ 18

*United States v. Taylor*,
272 F.3d 980 (7th Cir.2001) ........................................................................ 15, 16

*United States v. Vowell*,
516 F.3d 503 (6th Cir.2008) ........................................................................ 27

*United States v. Wallace*,
597 F.3d 794 (6th Cir.2010) ........................................................................ 21

*United States v. Webb*,
2021 WL 4806517 (6th Cir. October 14, 2021) ........................................................ 15

*United States v. West*,
962 F.3d 183 (6th Cir.2020) ........................................................................ 20, 21

**II. Statutes, Rules, and Guidelines**

28 U.S.C. § 1291 ........................................................................ 1

Fed.R.App.P. 4(b) ........................................................................ 1

USSG § 1B1.3(a)(2) ........................................................................ 15, 22

USSG § 1B1.3, comment. (n.5(B)(i) ........................................................ 18

USSG § 1B1.3, comment. (n.5(B)(ii) ........................................................ 17, 18, 19, 22

USSG § 2D1.1(c)(1)(7) ........................................................................ 16

USSG § 2D1.1, comment. (n.5) ........................................................................ 15

USSG § 5K2.2 ........................................................................ 23, 25, 26

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Atkins respectfully waives oral argument. The issues presented are sufficiently addressed by the record.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

On September 10, 2024, Samuel Atkins entered a guilty plea to Counts 1, 4, and 5 of the Indictment. *See* [R. 62: Minute Entry for Rearraignment, Page ID # 527-28]. Following sentencing, the district court entered a Judgment on January 27, 2025. *See* [R. 79: Judgment, Page ID # 653-60]. Mr. Atkins filed notice of appeal on February 10, 2025. *See* [R. 80: Notice of Appeal, Page ID # 661-62]. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

I. Did the district court err in its drug quantity calculation under USSG § 2D1.1?

II. Did the district court err by applying a two-level firearm enhancement pursuant to USSG § 2D1.1(b)(1)?

III. Did the district court err by applying an upward departure pursuant to USSG § 5K2.2?

IV. Is Mr. Atkins's sentence substantively reasonable?

## STATEMENT OF THE CASE

On April 11, 2024, Samuel Atkins was indicted in the Eastern District of Kentucky. *See* [R. 1: Indictment, Page ID # 1-7]. Count 1 alleged Mr. Atkins, a convicted felon, possessed firearms on January 3, 2023 in violation of 18 U.S.C. § 922(g)(1). *Id*. at Page ID # 1-2. Count 4 charged Mr. Atkins with distributing a fluorofentanyl mixture on January 5, 2023. *Id*. at Page ID # 3. Count 5 alleged Mr. Atkins possessed with intent to distribute a fentanyl/fluorofentanyl mixture, also on January 5. *Id*.

The investigation in this case began when the United States Marshals Service (USMS) adopted two pending state arrest warrants for Mr. Atkins on December 8, 2022. [R. 44: Transcript, Suppression Hearing, Page ID # 308-09]. USMS unsuccessfully attempted to surveil him near Pikeville, Kentucky throughout December. But on January 2, 2023, USMS located a GMC Yukon registered to Mr. Atkins's girlfriend parked at a residence in Richmond, Kentucky. *Id*. at Page ID # 340, 352. USMS "approached the residence, began to knock at the front entrance, announced [themselves] and direct[ed] Mr. Atkins by name to come out." *Id*. at Page ID # 292. Receiving no response, USMS "made the determination to obtain a search warrant and go into the residence and take Mr. Atkins into custody." *Id*.

USMS made forced entry into the residence on January 3, 2023. [R. 19-2: KSP Investigative Report, Page ID # 87]. "Task Force members conducted a protective sweep" and located Mr. Atkins in a rear bedroom. *Id*. They "observed suspected controlled substances and firearms in plain view." *Id*. Mr. Atkins had visible drug residue on his clothes and nose, and "it [was] obvious he may have ingested [them.]" [R. 44: Transcript, Suppression Hearing, Page ID # 374, 385-87]. *See also* [R. 19-2 KSP Investigative Report, Page ID # 87] ("visible on the recording was a white powdery substance around Atkins' nose").

Mr. Atkins participated in an interview at the Madison County, Kentucky Sheriff's Department, admitting he "snorted an entire gram" prior to law enforcement's entry and that "he thought it might kill him." [R. 44: Transcript, Suppression Hearing, Page ID # 398]. Investigators had difficulty keeping Mr. Atkins on task during the interview as he frequently strayed into unrelated conversations and topics and "lost his composure." *Id*. at Page ID # 398-400. Kentucky State Police (KSP) Detective Jasper White acknowledged that "[i]t occurred" to him as they were talking that Mr. Atkins might be intoxicated. *Id*. at Page ID # 400. At one point, Mr. Atkins said he received approximately 5 to 10 pounds of methamphetamine once or twice per month from May 2022 to October

2022. [R. 82: Sealed PSR, Page 6, Paragraph 10].[1] Mr. Atkins also estimated he "was being supplied one kilogram of heroin once or twice per month." *Id*.

Mr. Atkins was subsequently incarcerated at the Madison County Detention Center (MCDC). On January 5, 2023, Mr. Atkins was moved from intake to general population. "Later that evening, jail staff entered the cell and observed four inmates exhibiting signs of overdosing." *Id*. at Paragraph 11. Narcan was administered to the affected inmates. *Id*. Two were taken to the hospital, while the other two declined further medical treatment. *Id*. The two hospitalized inmates were released and returned to MCDC the following day.

MCDC personnel searched the cell and found a glove near Mr. Atkins's bunk containing three bags of narcotics. *Id*. at Page 7, Paragraph 12. They respectively contained 11.118 grams of a fluorofentanyl mixture, 33.99 grams of a fluorofentanyl/fentanyl mixture, and 27.532 grams of a fentanyl mixture. *Id*.

The same KSP detectives returned to interview Mr. Atkins a second time. Mr. Atkins told them he had a large amount of narcotics hidden within his body at the time of his arrest and that "one of the balloons had burst" inside of him. [R. 44: Transcript, Suppression Hearing, Page ID # 407]. The detectives asked and Mr. Atkins confirmed the drugs hidden inside of him were the reason he seemed

---

[1] Mr. Atkins's PSR is filed in the district court record under seal, thus Page ID numbers are unavailable. All citations refer to the page and paragraph numbers included in the PSR itself.

"confused" during prior questioning. *Id*. at Page ID # 403. Mr. Atkins admitted to distributing a portion of the drugs he brought into the jail to other inmates.

Mr. Atkins pleaded guilty to Counts 1, 4, and 5 pursuant to a Plea Agreement.[2] *See* [R. 61: Plea Agreement, Page ID # 514-26]; [R. 62: Minute Entry for Rearraignment, Page ID # 527-28]; [R. 88: Transcript, Rearraignment, Page ID # 733-73]. Following his plea, the United States Probation Office (USPO) prepared Mr. Atkins's Pre-Sentence Investigation Report (PSR). USPO determined Counts 4 and 5 would group, while the firearms possession offense in Count 1 would not. *See* [R. 82: Sealed PSR, Page 8, Paragraph 21] (citing USSG § 3D1.2(d)).

In calculating the base offense level for Counts 4 and 5, USPO did not rely on the quantity of drugs found at MCDC on January 5, 2023. Instead, USPO cited Mr. Atkins's statements about "historical methamphetamine and heroin trafficking" and attributed an additional 30 pounds of methamphetamine and 1 kilogram of heroin to him, producing a total drug quantity of 28,810.96 kilograms of converted drug weight. *Id*. at Page 6, FN 1. USPO also included a two-level enhancement for possession of a firearm pursuant to USSG § 2D1.1(b)(1) based on Mr. Atkins's possession of guns on January 3, 2023.

---

[2] Mr. Atkins preserved his right to appeal all aspects of his sentence. *See* [R. 62: Plea Agreement, Page ID # 522, Paragraph 11].

The government subsequently filed a motion requesting a six-level upward departure prior to sentencing. *See* [R. 65: Motion for Upward Departure, Page ID # 550-56]. Relying on USSG § 5K2.2, the government argued the departure was justified based on "the significant injury and risk of death resulting from" Mr. Atkins's distribution of fentanyl and fentanyl derivatives. *Id*. at Page ID # 550.

Mr. Atkins objected to the drug quantity calculation, the firearm enhancement, and the government's upward departure motion prior to sentencing. *See* [R. 74: Sentencing Memorandum, Page ID # 574-88]. Mr. Atkins argued the historical drug quantity relied upon by USPO was not part of the same course of conduct or common scheme or plan as Counts 4 and 5. Mr. Atkins said relying on the higher quantity "would capture events wholly disconnected from Mr. Atkins's offenses of conviction" based entirely on statements he made while intoxicated and "unsupported by corroborating evidence." *Id*. at Page ID # 578.

Mr. Atkins said the firearm enhancement should not apply for similar reasons. Because Counts 4 and 5 related to conduct occurring "while he was incarcerated at MCDC on January 5, 2023[,]" Mr. Atkins's previous possession of firearms could not be considered part of the same "episode, spree, or ongoing series of offenses[.]" *Id*. at Page ID # 580.

Mr. Atkins opposed the government's upward departure motion because his "currently calculated guideline range" was "already reflective of the seriousness of

his conduct." *Id*. at Page ID # 584. He noted that even if the district court granted his objections, "his recommended sentencing range would still be 168-210 months."[3] *Id*. at Page ID # 586. "A sentence at the top of this range would result in a sentence of 17 ½ years," meaning he "would be in his mid-to-late sixties before he is released." *Id*. Mr. Atkins also noted the "overdoses occurring at MCDC were non-fatal[,]" and he did not "intentionally cause any injury suffered[.]" *Id*. at Page ID # 587. In fact, Mr. Atkins "had used the same substance himself and did not overdose, so he did not anticipate that the others would react as they did." *Id*.

The district court conducted Mr. Atkins's sentencing hearing on January 24, 2025. *See* [R. 76: Minute Entry for Sentencing, Page ID # 649-50]. The government called KSP Detective Jasper White, who testified about his interactions with and interviews of Mr. Atkins on January 3, 2023 following his arrest and January 9, 2023 after the overdoses. *See* [R. 89: Transcript, Sentencing, Page ID # 780]. White confirmed he saw white residue on Mr. Atkins's shirt and "residue under his nose" during the first interview. *Id*. at Page ID # 784. The

[3] Mr. Atkins was also designated a career offender pursuant to USSG § 4B1.1(a). However, the offense level otherwise calculated by the district court was "higher than 37," so the career offender guideline did not impact the recommended sentencing range. *See* [R. 82: Sealed PSR, Page 9, Paragraph 31].

government also played portions of the audio recordings of Mr. Atkins's interviews with Detective White.[4] *See id*. at Page 789-90, 792, 794.

On cross-examination, Detective White again confirmed he saw "powder" on Mr. Atkins's nose and shirt during the first interview and agreed it was "clearly indicative" of recent drug use. *Id* at Page ID # 798-99. White also recalled that Mr. Atkins told him he had recently used drugs. *Id*. at Page ID # 799. Mr. Atkins told White he was trafficking narcotics between May 2022 and October 2022, not during November and December prior to his arrest on January 3, 2023. *Id*. at Page ID # 801. White said the drugs found at the residence on that date were "small quantities[.]" *Id*. at Page ID # 806. When questioned by the district court, White noted it was common for users to package narcotics for personal use in the way they were discovered at the time of Mr. Atkins's arrest. *Id*. at Page ID # 807, Lines 6-16.

The government also called Rachel Hackworth, a former MCDC employee who was present on the night of the overdoses. *Id*. at Page ID # 814. She described administering Narcan to an inmates exhibiting overdose symptoms. *Id*. at Page ID # 821. After doing so, the inmate "came back to and started talking."

---

[4] The complete recordings of these interviews were submitted as exhibits for purposes of Mr. Atkins's suppression motion. *See* [R. 22: Notice of Filing]; [R. 19-5: Audio Interview Recording]; [R. 19-6: Second Audio Interview Recording]. Mr. Atkins has mailed 5 CDs to this Court containing copies of the recordings. Because they are "exhibits filed in the district court[,]" the recordings are "properly part of the record on appeal." *Hough v. Carlton*, 339 Fed.Appx. 520, 522 (6th Cir.2009) (citing Fed.R.App.P. 10(a)(1)).

*Id*. at Line 20. He “jumped up” and said “let’s get this poker game going.” *Id*. at Lines 21-22. The inmate was immediately “back to his normal talking self, like nothing had happened.” *Id*. at Lines 22-23. Hackworth recalled the two inmates who were transported to the hospital returned to MCDC “the next day.” *Id*. at Page ID # 825, Line 1.

The government’s final witness was Annajanette French, another former MCDC employee. *Id*. at Page ID # 827. Like Ms. Hackworth, Ms. French was part of the response team the night of the overdoses. *Id*. at Page ID # 828-29. Ms. Hackworth recalled administering Narcan to an inmate who appeared to be struggling to breathe. *Id*. at Page ID # 830. He regained consciousness after staff applied an air mask. *Id*. at Page ID # 830-31. Mr. Hackworth traveled with the inmate to the hospital. *Id*. at Page ID # 831.

Following testimony, the district court addressed Mr. Atkins’s objections. *Id*. at Page ID # 836. Regarding drug quantity, the government speculated Mr. Atkins “was going to distribute” the drugs he smuggled into the jail “in the normal course” had he not been arrested. *Id*. at Page ID # 842. Mr. Atkins argued that the May 2022 to October 2022 drug trafficking Mr. Atkins mentioned during his interview was too attenuated to be considered relevant conduct to his January 2024 offenses of conviction. *Id*. at Page ID # 845-46. In addition to the timing, the “method of distribution” and “participants involved” were sufficiently distinct to

separate his drug offenses at MCDC from his trafficking in 2023. *Id*. at Page ID # 847.

The government argued the firearm enhancement should apply because Mr. Atkins obtained guns in exchange for narcotics at some point. *Id*. at Page ID # 844. As with the drug quantity issue, Mr. Atkins noted that his firearm possession could not have been connected to his drug convictions because he was incarcerated at MCDC when they occurred. *Id*. at Page ID # 847.

The district court overruled both objections. *Id*. at Page ID # 848. The court concluded Mr. Atkins's historical drug trafficking was "part of the same course of conduct as well as a common scheme or plan" as his offenses of conviction. *Id*. at Page ID # 848, Lines 7-10. The court also found that Mr. Atkins continued to distribute drugs "throughout the entire time period…until the time he was arrested." *Id*. at Lines 15-17. The court said it saw no distinction between Mr. Atkins exchanging narcotics for firearms before his arrest and providing drugs to other inmates while at MCDC, assuming he was just "engaging in" a "regular pattern[.]" *Id*. at Page ID # 849.

The government argued its request for an upward departure was warranted because Mr. Atkins should not escape "responsibility" for "what occurred" just because the inmates "didn't die or suffer…extreme debilitating effects from the fluorofentanyl" they ingested. *Id*. at Page ID # 860. The district court asked the

government if the extent of the departure mattered given that Mr. Atkins's offense level and criminal history category were already so high. *Id*. at Page ID # 861-62. The government still insisted a six-level departure was appropriate to maintain parity with its upward departure requests in other cases. *Id*. at Page ID # 862, Lines 12-23. Mr. Atkins noted the court's calculated guideline range of 292-365 months was already sufficient to account for the overdoses. Mr. Atkins also pointed out USSG § 5K2.2's distinction between intentional and negligent conduct in determining whether a departure based on physical injury is warranted. *Id*. at Page ID # 866-67, Lines 23-25, 1-2.

The district court ultimately granted the government's motion and applied a two-level upward departure producing a total offense level of 37 and a guideline imprisonment range of 360-life. *Id*. at Page ID # 870.

During allocution, defense counsel discussed Mr. Atkins's background, noting his lifelong struggle with drug addiction. *Id*. at Page ID # 875. Despite his criminal history, Mr. Atkins had started to turn a corner when he was released from prison in 2019. "Unfortunately, this was the first time that he was ever exposed to heroin and methamphetamine." *Id*. at Page ID # 876, Lines 9-11. Those drugs were far more addictive than anything he had taken in the past, and "it just overwhelmed him." *Id*. at Lines 14-17.

Counsel noted Mr. Atkins's skills as a contractor and "community handyman" who helped those in need, particularly "[o]lder people." *Id*. at Page ID # 877, Lines 4-7. Counsel again insisted that even a 210-month sentence would require Mr. Atkins to remain in custody until he "is in his mid to late 60s." *Id*. at Page ID # 878, Lines 20-21. Mr. Atkins would also "be in the lowest risk category to reoffend when he's released." *Id*. at Lines 23-24.

In his remarks, Mr. Atkins said:

> And just the way it happened, I never dreamed that my statements would lead to 360 to life. I never knew that. I remember some of the things I said, but when you play the tapes, and I play the tapes at the jail, I'm just amazed. Like, there's nothing I can say.

*Id*. at Page ID # 882, Lines 20-24.

The district court imposed a sentence of 396 months. *Id*. at Page ID # 894. This appeal now follows.

## STANDARD OF REVIEW

"A district court's drug quantity determination is a factual finding" reviewed "under the clearly erroneous standard." *United States v. Ashrafkhan*, 821 Fed.Appx. 428, 443 (6th Cir.2020) (citing *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir.2008)). This Court also reviews the application of the firearm enhancement under USSG § 2D1.1(b)(1) for clear error. *United States v. Araiza*, 643 Fed.Appx. 524, 525 (6th Cir.2016) (citing *United States v. Miggins*, 302 F.3d 384, 390 (6th Cir.2002)).

However, this Court considers a "district court's legal interpretation of the Guidelines" de novo. *United States v. Sands*, 948 F.3d 709, 712-13 (6th Cir.2020) (citing *United States v. Settle*, 414 F.3d 629, 630 (6th Cir.2005)). *See also United States v. Gales*, 137 Fed.Appx. 875, 876 (6th Cir.2005) (citing *United States v. Gilbert*, 173 F.3d 974, 978 (6th Cir.1999)) (de novo standard applies "to the district court's legal interpretation of what constitutes relevant conduct under the Guidelines").

This Court reviews upward departures and the substantive reasonableness of a defendant's sentence for abuse of discretion. *United States v. Green*, 729 Fed.Appx. 416, 421 (6th Cir.2018) (citing *United States v. Carter*, 510 F.3d 593, 600 (6th Cir.2007)).

## SUMMARY OF THE ARGUMENT

Mr. Atkins was convicted of distributing and possessing with intent to distribute mixtures containing fentanyl and fentanyl analogues on January 5, 2023 while he was incarcerated at MCDC. The district court improperly relied on Mr. Atkins's alleged historical methamphetamine and heroin trafficking activity from May 2022 to October 2022 to significantly increase his guideline range. The court also erred by imposing a two-level enhancement pursuant to USSG § 2D1.1(b)(1) based on Mr. Atkins's possession of firearms on January 3, 2023. The court did not discuss or otherwise employ this Court's approved framework for determining whether the firearm enhancement should apply when determining the offense level for Mr. Atkins's Count 4 and 5 convictions.

After calculating Mr. Atkins's applicable guideline range as 292-365 months, the district court then erred by departing upward pursuant to USSG § 5K2.2 based on overdoses that occurred at MCDC. Given the specific circumstances and the sentencing range Mr. Atkins already faced, applying an upward departure was an abuse of discretion.

Mr. Atkins's sentence is substantively unreasonable for similar reasons. The district court gave too much weight to Mr. Atkins's historical drug trafficking and the overdoses, while improperly discounting his age and reduced likelihood of recidivism. His sentence must be vacated.

## ARGUMENT

### I. The district court erred in its drug quantity calculation under USSG § 2D1.1.

Comment 5 to USSG § 2D1.1 provides that "types and quantities of drugs not in the count of conviction may be considered in determining the offense level[,]" but only so long as those additional quantities are "relevant conduct" under the Guidelines. USSG § 1B1.3(a)(2) defines relevant conduct as "all acts and omissions…that were part of the same course of conduct or common scheme or plan as the offense of conviction." The sentence imposed in this case turned primarily on the district court's consideration of drug trafficking conduct occurring months prior to Mr. Atkins's convictions for providing narcotics to fellow inmates while in custody at a local jail. The only evidence of this historical drug trafficking was Mr. Atkins's statements during a post-arrest interview while he was intoxicated. This was error.

While courts are permitted to consider a "broad range of information" at sentencing, "[t]he relevant conduct guideline is 'not without limits.'" *United States v. Webb*, 2021 WL 4806517 at *4 (6th Cir. October 14, 2021) (citing *United States v. Rios*, 830 F.3d 403, 440 (6th Cir.2016)); *United States v. Taylor*, 272 F.3d 980, 983 (7th Cir.2001) (citing *United States v. Crockett*, 82 F.3d 722, 729 (7th Cir.1996)). "[T]he relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of

serious incidental criminality to ride in at sentencing" and drive the outcome. *Taylor*, 272 F.3d at 983 (citing *United States v. Ritsema*, 31 F.3d 559, 567 (7th Cir.1994)).

This is precisely what happened in Mr. Atkins's case. The guideline calculation producing his recommended sentencing range was derived from Mr. Atkins's drug convictions for Counts 4 and 5. Those offenses were for distribution of a fluorofentanyl mixture and possession with intent to distribute a fluorofentanyl/fentanyl mixture on January 5, 2025 while he was incarcerated at MCDC. If based on the quantities of drugs involved in Counts 4 and 5, Mr. Atkins's base offense level would have been 26 because those offenses involved at least 400kg but less than 700kg of Converted Drug Weight. *See* [R. 82: Sealed PSR, Pages 30-31 (objection to Paragraphs 10 n.1 and 16)]; USSG § 2D1.1(c)(1)(7). Instead, the district court included an additional 30 pounds of methamphetamine and one kilogram of heroin in its drug quantity calculation, which increased Mr. Atkins's offense level to 34. [R. 82: Sealed PSR, Pages 7-8, Paragraph 16]. For a defendant like Mr. Atkins in Criminal History Category VI, the impact was staggering—It more than doubled the applicable guideline range from 120-150 months to 262-327 months.

This is why relevant conduct has been described as a "fearsome rule in drug cases[.]" *United States v. Ortiz*, 431 F.3d 1035, 1041-42 (7th Cir.2005). It "so

favors the government" that sentencing courts are required to be "scrupulous to ensure" adherence to the guideline's "limits." *Id.* Along those lines, it is essential that USSG § 1B1.3(a)(2) "not be read to encompass any offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense." *Id*. (citing *United States v. Patel*, 131 F.3d 1195, 1204 (7th Cir.1997)). "[T]he mere fact that the defendant may have engaged in other drug transactions 'is not sufficient to justify treating those transactions as relevant conduct for sentencing purposes.'" *Id*. (citing *Crockett*, 82 F.3d at 730).

The district court in this case erred by including an additional 30 pounds of methamphetamine and 1 kilogram of heroin in its base offense level calculation for Counts 4 and 5. Mr. Atkins providing other inmates with a portion of the drugs he snuck into MCDC was not part of the "same course of conduct" or "common scheme or plan" as the methamphetamine-for-firearms trafficking between May 2022 and October 2022 referenced in his interview. USSG § 1B1.3, comment. (n.5(B)(ii)).

Over time, courts have distinguished between the terms "common scheme or plan" and "same course of conduct," emphasizing that a "common scheme or plan" requires that acts "be connected together by common participants or by an overall scheme[,]" while the "same course of conduct" looks to "whether the defendant repeats the same type of criminal activity over time." *See, e.g., United States v.*

*Hill*, 79 F.3d 1477, 1482 (6th Cir.1996) (citing *United States v. Silkowski*, 32 F.3d 682, 687 (2d Cir.1994); *United States v. Sanders*, 982 F.2d 4, 9 (1st Cir.1992). Application Note 5(B) to USSG § 1B1.3 makes it clearer:

> For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar modus operandi.
>
> …
>
> Offenses that do not qualify as a part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.

USSG § 1B1.3, comment. (n.5(B)(i)-(ii)).

Mr. Atkins was not convicted of a conspiracy in this case. He pleaded guilty to drug crimes that occurred on a single day while he was incarcerated. He admitted providing other inmates with a portion of the drugs he brought into the jail to ensure he would be able to continue his own personal use. As a result, the methamphetamine and heroin trafficking Mr. Atkins is alleged to have committed months prior to January 5, 2023 was not substantially connected to his offenses of conviction by "common participants" or "an overall scheme[.]" *Hill*, 79 F.3d at 1482. His drug offenses at MCDC transpired under entirely different circumstances while he was in custody, and the distribution occurred without

remuneration. These circumstances clearly distinguish Mr. Atkins's offense conduct from any prior drug trafficking discussed in his interview.

Similarly, Mr. Atkins's alleged drug activity before January 5, 2023 cannot be considered part of the same course of conduct as his Count 4 and 5 convictions. Offenses "qualify as part of the same course of conduct if that are sufficiently connected or related to each other as to warrant the conclusion they are part of a single episode, spree, or ongoing series of offenses." USSG § 1B1.3, comment. (n.5(B)(ii)). In making this determination, sentencing courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id*. And "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id*.

Mr. Atkins's possession and distribution of drugs at MCDC and supposed drug trafficking months prior were clearly not part of a "single episode" or a "spree" because they were temporally attenuated and interrupted by an intervening event, Mr. Atkins's arrest. *Id*. Likewise, Mr. Atkins admitted to smuggling drugs into MCDC and making a portion of those drugs available to other inmates for no remuneration. That conduct is not the same as exchanging large quantities of methamphetamine for firearms on the outside. These are distinct types of criminal conduct that cannot be considered an "ongoing series of offenses." *See, e.g., Hill*, 79 F.3d at 1484-85 (prior drug transaction not included in relevant conduct where

government failed to establish it "occurred in the same location, or involved the same supplier, buyer, or other participants" as the offense of conviction).

The district court's drug quantity calculation is erroneous because it ignores the defined limits of relevant conduct outlined in USSG § 1B1.3 and the related commentary and improperly captures events wholly disconnected from Mr. Atkins's offenses of conviction and unsupported by corroborating evidence.

Mr. Atkins's sentence must be vacated.

### II. The district court erred by applying a two-level firearm enhancement pursuant to USSG § 2D1.1(b)(1).

The same relevant conduct principles should have applied when the district court was considering Mr. Atkins's objection to the USSG § 2D1.1 firearm enhancement. The court failed to conduct the appropriate analysis, and its ultimate conclusion was similarly erroneous.

This Court has "endorsed the use of a burden-shifting framework…to determine whether" the USSG § 2D1.1(b)(1) "firearm enhancement applies." *United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir.2023). First, the government must establish "by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense[.]" *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir.2007) (quoting *Hill*, 79 F.3d at 1485). *See also United States v. West*, 962 F.3d 183, 187 (6th Cir.2020). Although "the weapon need not be possessed during the

commission of the actual offense of conviction[,]" the government still must show it was "possessed during relevant conduct." *Id*.

As an initial matter, the district court failed to apply the required framework when assessing Mr. Atkins's objection. *See* [R. 89: Transcript, Sentencing, Page ID # 844-44] (discussing distinction between firearm issue in USSG § 2D1.1 and USSG § 2K2.1). The record reflects it only considered the issue in the context of how it might impact the offense level calculation for Mr. Atkins's Count 1 conviction pursuant to USSG § 2K2.1. *Compare id*. *with id*. at Page ID # 850, Lines 2-7.

This Court has counseled that "[c]riminal defendants have a substantial right to meaningful appellate review…of their sentences, which can only be vindicated if the record in the district court clearly reflects the [court's] consideration of all nonfrivolous arguments." *United States v. Wallace*, 597 F.3d 794, 802-08 (6th Cir.2010). Here, the court simply failed to apply the appropriate framework or to make the required findings to apply the USSG § 2D1.1(b)(1) enhancement. Had the district court done so, it would have been compelled to conclude the record failed to establish Mr. Atkins actually or constructively possessed a firearm during his commission of Counts 4 and 5. *See West*, 962 F.3d at 187.

Beyond this issue, Mr. Atkins did not possess firearms during conduct that was "part of the same course of conduct or common scheme or plan as" Count 4

and 5 convictions. USSG § 1B1.3(a)(2). To reiterate, Mr. Atkins's drug convictions were related to conduct occurring while he was incarcerated at MCDC on January 5, 2023. It follows that Mr. Atkins's previous possession of firearms cannot be considered part of the same "episode, spree, or ongoing series of offenses" as his drug crimes at MCDC. USSG § 1B1.3, comment. (n.5(B)(ii)).

Mr. Atkins's incarceration separates his prior firearm possession from his drug convictions in this case. He did not possess firearms when the drug offenses occurred. He was in custody and law enforcement had already confiscated them. Nor were his Count 4 and 5 convictions "connected together" to his alleged drug trafficking in May 2022 to October 2022 "by common participants or by an overall scheme[.]" *Id.* The circumstances were far different, which is why they do not constitute the same "course of conduct." *Hill*, 79 F.3d at 1482.

Mr. Atkins's sentence must be vacated.

## III. The district court erred by applying an upward departure pursuant to USSG § 5K2.2.

"[D]eparture is the exception" and is not a tool to be employed without appropriate necessity. *United States v. Heckman*, 30 F.3d 738, 742 (6th Cir.1994). In this case, the government not only asked the district court to depart upward, but to do so by six levels. The court ultimately applied a two-level upward departure pursuant to USSG § 5K2.2 based on the overdoses that occurred at MCDC. This increased Mr. Atkins's applicable guideline range from 292-365 months to 360

months to life. The court did so despite recognizing that any departure of two or more levels would push Mr. Atkins into the 360-life range. *See* [R. 89: Transcript, Sentencing, Page ID # 861-63]. *See also id*. at Page ID # 863, Lines 9-15 (government acknowledgement that number of levels of departure irrelevant because sentencing range will be the same).

USSG § 5K2.2 indicates that a "court may increase the sentence above the authorized guideline range" if "significant physical injury resulted" from the offense. "The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." USSG § 5K2.2. Given full consideration of the circumstances, the district court's decision to depart upward in this case was an abuse of discretion. *See United States v. Prince*, 749 Fed.Appx. 396, 398 (6th Cir.2018) (confirming abuse of discretion is appropriate standard of review).

In the briefing below, the government cited two cases in support of its six-level departure request. In *Prince*, the defendant was convicted of aiding and abetting the distribution of heroin and fentanyl. At sentencing, the district court found that the distribution led to a non-fatal overdose resulting in "significant physical injury" and warranting an upward departure pursuant to USSG § 5K2.2. *Prince*, 749 Fed.Appx. at 398. The departure increased Prince's guideline

imprisonment range from 21-27 moths to 30-37 months. Of note, the court "acknowledged that Prince did not act intentionally, but negligently, warranting a less substantial departure" and imposed a sentence of "36 months." *Id*.

In *United States v. Gillespie*, 929 F.3d 788, 789 (6th Cir.2019), the defendant pleaded guilty to fentanyl trafficking. The charge arose out of "one sale of fentanyl to Jerry Brice," who consumed the drug, "had a stroke[,] and entered a coma[.]" *Id*. "[H]e was discovered unresponsive on his parents' front porch and doses of Narcan were unsuccessful at resuscitating him." *Id*. Brice was hospitalized "in a medically induced coma for over two weeks, but luckily he survived." *Id*. It was later determined Brice suffered a "subarachnoid hemorrhage and anoxic brain injury causing his brain to lose oxygen" as well as "liver failure, kidney failure, and heart failure[.]" *Id*. He "only recovered his day-to-day functioning after six months of intensive physical, speech, and occupational therapies." *Id*.

Brice testified at Gillespie's sentencing about "his overdose and resulting ailments[.]" *Id*. The defendant called a pharmacist to testify "that it was possible Brice's pre-existing health status affected his likelihood of overdose symptoms." *Id*. The district court ultimately applied an upward departure increasing Gillespie's sentencing range from 27-33 months to 51-63 months and imposed a sentence of 51 months. *Id*.

In both of these cases, the sentencing court determined the applicable guideline range as originally calculated was too lenient to provide an appropriate sentence given that an overdose occurred. In contrast, the district court determined Mr. Atkins's guideline range before the upward departure was 292-365 months. This recommended sentencing range for a 52-year-old defendant was more than sufficient to satisfy 18 U.S.C. § 3553(a)'s requirements while also accounting for the overdoses. The district court's conclusion to the contrary was an abuse of discretion. *See Price*, 749 Fed.Appx. at 398 (confirming abuse of discretion is appropriate standard of review).

As discussed at sentencing, Mr. Atkins would be in his mid-to-late sixties at the time of his release had the district court imposed the requested sentence of 210 months. [R. 89: Transcript, Sentencing, Page ID # 878-79]. Yet the court sentenced Mr. Atkins to 396 months, nearly twice as high. *Id*. at Page ID # 894. The court did so despite USSG § 5K2.2 indicating that the extent of any departure based on significant physical injury "should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." The guideline goes on to say:

> When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated.

USSG § 5K2.2.

This analysis was reflected in the sentencing court's departure determination in *Prince* because the overdose was non-fatal and did not result in long-term consequences and because the defendant did not intentionally inflict the injury. *See Prince*, 749 Fed.Appx. at 398. Rather than sentencing Prince within the 21-27 month range, the court found that a 36-month sentence was appropriate. The overdoses occurring in this case were also non-fatal. All four victims were quickly administered Narcan. Two did not require additional medical attention and were acting as if nothing had happened immediately after being treated. The other two returned to general population at MCDC the following day. It is undisputed that Mr. Atkins did not intentionally cause any injury suffered as a result of the overdoses. In fact, he had used the same substance himself and did not overdose, so he did not anticipate that the others would react as they did.

Despite these circumstances, the Court decided 295-365 months was not enough. It applied an upward departure increasing the top of the applicable guideline range to life, then it imposed a sentence of 396 months, more than 6 years higher than the middle of the previous 292-365 month range. Mr. Atkins is already in his 50s, yet his projected BOP release date is now February 15, 2051.

The district court abused its discretion in applying an upward departure. The otherwise applicable guideline range was already sufficient to satisfy the statutory

sentencing factors, thus no "exception[al]" circumstances necessitated that the court depart upward. *Heckman*, 30 F.3d at 742.

Mr. Atkins's sentence must be vacated.

**VI. Mr. Atkins's sentence is substantively unreasonable.**

"For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of' 18 U.S.C. § 3553(a). *United States v. Johnson*, 2024 WL 4648088 at *5 (6th Cir. November 1, 2024) (citing *United States v. Curry*, 536 F.3d 571, 573 (6th Cir.2008) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir.2008))). On the other hand, "[a] sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id*. (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir.2008)). Sentencing judges "may not presume that the guidelines range is reasonable, but must consider all of the relevant § 3553(a) factors and impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2)." *Id*.

The district court abused its discretion in this case by giving unreasonable weight to Mr. Atkins's uncharged and uncorroborated historical drug trafficking,

the overdoses that occurred at MCDC, and Mr. Atkins's age and likelihood of recidivism in determining an appropriate sentence. Mr. Atkins's alleged drug trafficking from May 2022 to October 2022 was the single most important factor in the court's calculation of his applicable guideline range. The court relied on this conduct despite the fact that it only became known to law enforcement based on his post-arrest statements while he was intoxicated. The court entirely disregarded these circumstances, substantially increasing Mr. Atkins's sentence based on alleged conduct distinct from and occurring months prior to his offenses of conviction.

The district court then made matters worse by applying an upward departure based on the overdoses occurring at MCDC. The court did so while recognizing the dramatic impact it would have given Mr. Atkins's otherwise applicable guideline range. [R. 89: Transcript, Sentencing, Page ID # 870]. At the same time, the court failed to specifically articulate why it believed the circumstances warranted an upward departure. *Id*. at Lines 2-23. Instead, the court simply said it was "important…to correctly calculate the guideline range." *Id*. at Lines 18-20.

The district court's overreliance on these factors resulted in Mr. Atkins receiving a 396-month sentence, far higher than would have been recommended even if all of his sentencing objections had been overruled.

On the other side of the ledger, the court gave too little consideration to Mr. Atkins's age, his low risk for recidivism, and the reality that it "could well be a life sentence given the impact incarceration has on health and longevity." [R. 74: Sentencing Memorandum, Page ID # 594] (citing Sebastian Daza, Alberto Palloni, Jerrett Jones, *The Consequences of Incarceration for Mortality in the United States*, 57 Demography 577 (April 2020), available at: https:// pmc.ncbi.nlm.nih.gov/articles/PMC7710643/pdf/nihms-1645870.pdf) (incarceration at age 45 translates into a loss of between 4 and 5 years of life expectancy or 13% of current US life expectancy for that age group). *See also* [R. 89: Transcript, Sentencing, Page ID # 903] (district court reference to Sentencing Commission's 2016 publication addressing decreased recidivism risk among older offenders); Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, American Journal of Public Health (March 2013), available at: https://ajph.aphapublications.org/doi/abs/10.2105/ AJPH.2012.301148 (each year in prison "produce[s] a 15.6% increase in the odds of death" translating to a "2-year decline in life expectancy for each year served in prison."); United States Sentencing Commission, *Older Offenders in the Federal System*, July 2022, Pages 41-44, available at: https://www.ussc.gov/sites/ default/files/pdf/researchand-publications/research-publications/ 2022/20220726_Older-Offenders.pdf (offenders older than 50 at time of

sentencing recidivate only 21.3 % of the time as compared to 53.4% of offenders under 50); Christopher Wildeman, *Incarceration and Population Health in Wealthy Democracies*, Criminology Vol. 54, Issue 2 (April 2016), Pages 360-82, available at: https://onlinelibrary.wiley.com/doi/abs/10.1111/1745-9125.12107.

The district court abused its discretion by imposing a 396-month sentence in this case. The court gave unreasonable weight to multiple important factors, rendering Mr. Atkins's sentence substantively unreasonable.

Mr. Atkins's sentence must be vacated.

## CONCLUSION

For the foregoing reasons, Mr. Atkins respectfully requests this Court vacate his sentence and remand to the district court for further proceedings consistent with this Court's findings.

Respectfully submitted,

/s/ Jarrod J. Beck

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY 40507

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). According to a computer count, the principal brief contains 7,000 words including footnotes.

/s/ Jarrod J. Beck

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF SERVICE

On June 20, 2025, I electronically filed this brief through the ECF system, which will send notice of docket activity to all other counsel of record.

/s/ Jarrod J. Beck

COUNSEL FOR DEFENDANT-APPELLANT

## APPELLANT'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Page ID # | Description of Document |
|---|---|---|
| R. 1 | 1-7 | Indictment |
| R. 19-2 | 81-89 | KSP Investigative Report |
| R. 44 | 283-416 | Transcript, Suppression Hearing |
| R. 61 | 514-526 | Plea Agreement |
| R. 62 | 527-528 | Minute Entry for Rearraignment |
| R. 65 | 550-556 | Motion for Upward Departure |
| R. 74 | 572-597 | Sentencing Memorandum |
| R. 76 | 649-650 | Minute Entry for Sentencing |
| R. 79 | 653-660 | Judgment |
| R. 80 | 661-662 | Notice of Appeal |
| R. 82 | N/A | Sealed PSR |
| R. 88 | 733-773 | Transcript, Rearraignment |
| R. 89 | 774-907 | Transcript, Sentencing |